IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

**LINWOOD RUDOLPH WILLIAMS,**
      **Plaintiff,**

v.　　　　　　　　　　　　　　　　　　　CIVIL ACTION NO. 1:18-CV-18
　　　　　　　　　　　　　　　　　　　　(JUDGE KLEEH)

**ZACHERIA ALI and**
**GANGSTER CHRONICLE WORLD WIDE, LLC,**
      **Defendants.**

## REPORT AND RECOMMENDATION RECOMMENDING PLAINTIFF'S MOTION FOR DEFUALT JUDGMENT BE GRANTED

This matter is before the undersigned pursuant to a referral order entered by Honorable Senior District Judge Irene M. Keeley on January 25, 2018. (ECF No. 3). This matter was reassigned to Honorable District Judge Thomas S. Kleeh on December 1, 2018 (ECF No. 27). *Pro* se Plaintiff Linwood Rudolph Williams, an individual currently incarcerated at FCI Hazelton Correctional Facility, filed a Motion to Enter Default Judgment on September 13, 2019 (ECF No. 67). Plaintiff previously filed a Motion to Enter Default Judgment in this matter on January 14, 2019 (ECF No. 29).

The undersigned entered a Report and Recommendation on Plaintiff's Motion (ECF No. 29) on May 7, 2019 (ECF No. 43). Plaintiff filed Objections (ECF No. 46) to the undersigned's Report and Recommendation along with a Motion for Leave to File an Amended Complaint with his Amended Complaint attached as Exhibit A on June 6, 2019 (ECF No. 47). On June 10, 2019, Honorable United States District Judge Thomas S. Kleeh entered an Order (ECF No. 49) granting Plaintiff's Motion for Leave to file an Amended Complaint, directing the Amended Complaint to be filed, and denying both the Report and Recommendation and Plaintiff's Motion to Enter Default Judgment as moot. Plaintiff's Amended Complaint was filed at ECF No. 50 on

1

June 10, 2019. On June 27, 2019, after a first unsuccessful attempt to serve the Amended Complaint and a summons upon the Defendants, the undersigned entered an order directing the summons be reissued to a corrected address (ECF No. 57). The summons was returned executed as to each of the named Defendants on July 31, 2019 (ECF Nos. 61 & 62). As a result, an answer or other responsive pleading to Plaintiff's Amended Complaint was due by August 21, 2019. As of this date, Defendants have not filed an Answer or other responsive pleading. Accordingly, the undersigned entered an Order Directing Entry of Default Against the Defendants on September 11, 2019 (ECF No. 65). On the same day, the Clerk of Court entered default against the Defendants as directed (ECF No. 66). On September 13, 2019, Plaintiff filed a Second Motion for Default Judgment (ECF No. 67). In his Motion, Plaintiff stated he would "rely upon documents and filings already established on the records of the court." (ECF No. 67 at 2).

The undersigned previously held an evidentiary hearing on Plaintiff's Motion to Enter Default Judgment (ECF No. 29) on March 20, 2019. (ECF No. 33). Following the hearing, the undersigned ordered the Plaintiff to provide supplemental evidence to the Court within ten days from entry of the Order to support the existence of a contract between the parties, how Defendant has breached his contractual obligations, and proof establishing the existence of damages. (ECF No. 34). The Plaintiff submitted supplemental evidence to the Court on April 1, 2019 (ECF No. 36) and submitted further evidence on April 8, 2019 (ECF No. 39). This matter is now ripe for a Report and Recommendation to Honorable United States District Judge Thomas S. Kleeh. For the reasons contained herein, the undersigned **RECOMMENDS** Plaintiff's Motion to Enter Default Judgment (ECF No. 67) be **GRANTED** and **Plaintiff be awarded DAMAGES in the amount of $1,500.00.** The undersigned further **RECOMMENDS** that any contractual relationship between Plaintiff and Defendants be deemed null and void as of October 5, 2015,

and accordingly, any proceeds from sales of Plaintiff's book, Power Moves I, as of October 5, 2015 belong exclusively to the Plaintiff.

### I.     BACKGROUND AND PROCEDURAL HISTORY

**A. Plaintiff's Original Complaint and First Motion to Enter Default Judgment.**

On January 22, 2018, Plaintiff filed his *pro se* complaint, docketed in Civil Action No. 2:18-CV-7 at ECF No. 1. That same day, the Clerk of Court mailed a Notice of Deficient Pleading and Intent to Dismiss, accompanied by a Bivens action form, an application to proceed *in forma pauperis*, a consent form to collection of fees from Plaintiff's trust account, and a Prisoner Trust Account Report form. (2:18-CV-7, ECF Nos. 2-1 – 2-4). However, this was not a Bivens action but rather an action for breach of contract. As a result, on January 24, 2018, the District Judge entered an order dismissing that case without prejudice and directing the Clerk to re-file the case as a civil contract action and directing Plaintiff to "disregard the Notice of Deficient Pleading and Intent to Dismiss forwarded him by the Clerk's Office." (2:18-CV-7, ECF No. 4).

Further, pursuant to the same order, Plaintiff's complaint was re-filed in the instant case, 1:18-CV-18, as a breach of contract action. Plaintiff's complaint requests $10,000,000 in damages. (ECF No. 1). On June 13, 2018, Plaintiff filed his Motion to Proceed *In Forma Pauperis* (ECF No. 10), his Prisoner Trust Account Report (ECF No. 11), and Consent to Collection of Fees from Trust Account. (ECF No. 12). On June 15, 2018 the undersigned granted Plaintiff's Motion to Proceed *In Forma Pauperis* and set an initial partial filing fee of $34.83 due within twenty-eight days along with monthly assessments thereafter until the $350.00 filing fee is paid in full. (ECF No. 13). Further, the undersigned directed the Clerk of Court to issue a 21-

day summons to Defendants and to notify the United States Marshal Services, who was directed to serve process. (ECF No. 13).

A summons was issued for each of the Defendants, Zacheria Ali and Gangster Chronicle World Wide, LLC on June 15, 2018 directing the Defendants to respond by answer or motion within 21 days and noting that failure to do so would result in entry of default. (ECF No. 13). The Summons for each Defendant was returned executed on June 29, 2018. (ECF Nos. 16-17). Consequently, an **Answer or other responsive pleading to the Complaint was due by July 21, 2018**. To date, Defendants have not filed an Answer or any other responsive pleading.

Accordingly, as a result of the Defendants' failure to file an Answer or other responsive pleading to the Plaintiff's Complaint, the undersigned entered an Order on August 13, 2018 (ECF No. 19) directing the Clerk of Court to enter default judgment against the Defendants. In the same order, the undersigned specifically noted that the order was not a "default judgment" which, "pursuant to Rule 55(b)(2), must still be applied for and proved to be appropriate by Plaintiff, as this is not a matter involving a sum certain." (ECF No. 19, at 3). As such, the Clerk of Court entered default against the Defendants on August 13, 2018. (ECF No. 20).

Plaintiff filed his Motion to Enter Default Judgment on January 14, 2019 (ECF No. 29) requesting the Court to enter a Default Judgment against the named Defendants. The undersigned held an evidentiary hearing on Plaintiff's Motion to Enter Default Judgment (ECF No. 29) on March 20, 2019. (ECF No. 33). Following the hearing, the undersigned ordered the Plaintiff to provide supplemental evidence to the Court within ten days from entry of the Order to support the existence of a contract between the parties, how Defendant has breached his contractual obligations, and proof establishing the existence of damages. (ECF No. 34). The Plaintiff

submitted supplemental evidence to the Court on April 1, 2019 (ECF No. 36) and submitted further evidence on April 8, 2019 (ECF No. 39).

The undersigned entered a Report and Recommendation on Plaintiff's Motion (ECF No. 29) on May 7, 2019 (ECF No. 43). Plaintiff filed Objections (ECF No. 46) the undersigned's Report and Recommendation along with a Motion for Leave to File an Amended Complaint with his Amended Complaint attached as Exhibit A on June 6, 2019 (ECF No. 47). On June 10, 2019, Honorable United States District Judge Thomas S. Kleeh entered an Order (ECF No. 49) granting Plaintiff's Motion for Leave to file an Amended Complaint, directing the Amended Complaint to be filed, and denying both the Report and Recommendation and Plaintiff's Motion to Enter Default Judgment as moot. Plaintiff's Amended Complaint was filed at ECF No. 50 on June 10, 2019.

**B. Plaintiff's Amended Complaint and Second Motion to Enter Default Judgment.**

Plaintiff's Amended Complaint (ECF No. 50) incorporates all allegations from his original Complaint. Plaintiff's Amended Complaint adds two new paragraphs. The new allegations contained within Plaintiff's Amended Complaint allege, first, that "Defendants infringed Plaintiff's Federal statutory and state common-law copyrights to his book Power Moves I by producing and selling ebook copies without Plaintiff's consent." (ECF No. 50 at 2, ¶ 11). Plaintiff alleges that "this omission was made knowingly and willfully." Id. Plaintiff further alleges that the Defendants have prevented "Plaintiff from publishing and profiting from his book and manuscripts by refusing to return them to Plaintiff." Id. Finally, Plaintiff alleges that the Defendant's have "knowingly and willfully stole Plaintiff's copyrights to his book and manuscripts by fraud and their continuing refusal to return said property to Plaintiff." Id. at 2, ¶

12. As a result, Plaintiff again seeks "actual and punitive damages from the defendants in the amount of $10,000,000.00." Id. at 2.

On June 27, 2019, after a first unsuccessful attempt to serve the Amended Complaint and a summons upon the Defendants, the undersigned entered an order directing the summons be reissued to a corrected address (ECF No. 57). The summons was returned executed as to each of the named Defendants on July 31, 2019 (ECF Nos. 61 & 62). As such, **an Answer or other responsive pleading to Plaintiff's Amended Complaint was due by August 21, 2019**. As of this date, Defendants have not filed an Answer or other responsive pleading. Accordingly, the undersigned entered an Order Directing Entry of Default Against the Defendants on September 11, 2019 (ECF No. 65) as to Plaintiff's Amended Complaint. On the same day, the Clerk of Court entered default against the Defendants as directed (ECF No. 66). On September 13, 2019, Plaintiff filed a Second Motion for Default Judgment (ECF No. 67). In his Motion, Plaintiff stated he would "rely upon documents and filings already established on the records of the court." (ECF No. 67 at 2).

## II. SUMMARY OF TESTIMONY

The Plaintiff appeared by phone from FCI Hazelton during the hearing before the undersigned on Plaintiff's Motion to Enter Default Judgment held on March 20, 2019. At the hearing, Plaintiff testified[1] that in January of 2010, Defendants Zacharia Ali and his company Gangster Chronicles Worldwide, LLC, by letter, offered Plaintiff a position writing for their website. (Rec. at 1:34:25 – 1:34:47). Plaintiff asked for a book deal, documentary, and full-length feature movie about Plaintiff's "life as a large-scale drug dealer." (Id. at 1:34:48 – 1:34:57).

---

[1] All citations contained within this section in reference to Plaintiff's testimony at the evidentiary hearing held on March 20, 2019 will be to times contained within the recording of Plaintiff's hearing on FTR Gold.

In response, Plaintiff mailed the Defendants "three manuscripts" of his book "Power Moves." Plaintiff testified that, shortly thereafter, he and the Defendants reached a deal for the publication of a "trilogy" of Plaintiff's books with the understanding that profits from said publication of his books would be split between the parties equally with each retaining "50 percent of the profits" less Defendants' related expenses to the publications. (*Id.* at 1:36:26 – 1:36:57). As a result of such agreement, Plaintiff testified that he has kept himself and his books "off the market in an exclusive commitment" to Defendant Ali for "five years." Plaintiff testified this commitment ended in 2015. (*Id.* at 1:37:00 – 1:37:20).

Plaintiff stated that he requested Defendants to provide him with an accounting and records of how many books had been sold and what expenses had been deducted. Plaintiff stated that Defendant represented he did not have time to provide the accounting. Plaintiff testified that he did, after several months, receive an informal accounting from the Defendant by email stating that his book, "Power Moves" sold "186 units". However, after two months, Plaintiff asked Defendants again regarding his book sales and Plaintiff testified that Defendant represented to him that "112" books had been sold. (*Id.* at 1:37:30 – 1:38:32). Plaintiff testified that this was not a formal accounting as the figures had been extracted and relayed by the Defendant from a report he had in his possession. (*Id.* at 1:38:35 – 1:38:58).

Plaintiff testified that, during the time he was committed to Defendants, he received "other offers from companies to do the same thing" and out of loyalty to Defendants and his contract with them, he "turned down" these other offers. (*Id.* at 1:39:03 – 1:39:40). Plaintiff testified that the agreement was for the parties to split profits "50/50" after Defendant "recovered his expenses" and Plaintiff was supposed to receive a "$5,000 advance". Plaintiff testified that, "after 22 months", he received a "$2,000 advance" and never received any more. Plaintiff

7

testified Defendant would send him anywhere from $50 -$100 "here and there" but that was not toward the advance. (*Id.* at 1:39:50 – 1:40:03). Plaintiff testified, in total, he would estimate he may have received "$1,500" in miscellaneous deposits to his prisoner account. (*Id.* at 1:40:50 – 1:41:05). Plaintiff testified he believed these miscellaneous deposits to be "personal" and from "a friend". (*Id.* at 1:41:06 – 1:41:55). Plaintiff testified he received the miscellaneous deposits over the course of "4 or 5 years." (*Id.* at 1:52:00 – 1:53:00).

Plaintiff testified that Defendants prepared the contract agreement and sent it to him by mail. (*Id.* at 1:42:00 – 1:42:20). Plaintiff testified that while the agreement was for Defendant to publish "three books", Defendant only published one. (*Id.* at 1:42:35 – 1:42:56). Plaintiff testified that he completed his obligation under the contract in "January 2010" by sending the manuscripts to Defendants for publication of the trilogy of his "Power Moves" book trilogy. (*Id.* at 1:44:20 – 1:44:55).

Regarding Plaintiff's request for $10,000,000 in damages, Plaintiff testified he reached this figure "based on similar books" and "similar videos". (*Id.* at 1:43:02 – 1:43:20). Plaintiff further testified that he calculated his damages due to the "time" that passed during which he turned down other offers for the publication of his books. (*Id.* at 1:53:13 – 1:53:45). Regarding the "other offers" Plaintiff received, Plaintiff testified that he was not offered any money "up front" but rather, that he was offered opportunities to have his books published. (*Id.* at 1:54:00 – 1:54:32). Plaintiff based his damages calculation on the "5-year commitment" that was "exclusive" as well as the profits made by "similar books." (*Id.* at 1:55:36 – 1:57:02). Plaintiff testified that the "market for his books" is the "public and people in prison." (*Id.* at 1:57:02 – 1:57:15).

Plaintiff testified that his first book was published in both paper back format and "e-book" format. However, Plaintiff testified that Defendants "stopped publishing" the paper back and Plaintiff was unaware his book was being published in "e-book" format" and further, Plaintiff testified that he did not consent to having his book published in "e-book" format. (*Id.* at 1:57:30 – 1:58:32). Plaintiff later testified that Defendants published his book, "Power Moves I" on "June 30, 2014." (*Id.* at 2:09:00 – 2:09:45). Plaintiff testified that he never received any royalties from "Power Moves I" that was published by the Defendant. (*Id.* at 2:10:50 – 2:10:58). The undersigned asked the Plaintiff if he was entitled to "any royalties from the first book" given that the contract stated his profits would be "less expenses" incurred by the Defendants to publish. Plaintiff testified that it costs "$800 to publish on Amazon" but otherwise, did not state how much he believed he would be entitled to less the Defendants' expenses. (*Id.* at 2:11:00 – 2:12:02).

Plaintiff testified that he published his "second book" on Amazon on his own and has turned rights to the profits from his book, "Power Moves II: Young and Deadly" to his "son" and he is unaware how much money the book has made or how many have been sold. (*Id.* at 1:59:00 – 2:00:06). Plaintiff testified that he is in possession of his "manuscripts" for several "Power Moves" books and has plans to write "ten" in total and to "self-publish" his books. (*Id.* at 2:00:02 – 2:01:18). Plaintiff testified that his contract with the Defendants ended in "October 2015". (*Id.* at 2:06:25 – 2:07:27).

Plaintiff testified that he filed this action in hopes that the Court would be able to compel the Defendants through subpoena or otherwise to provide Plaintiff with the records and accountings he has requested, however, Defendants have failed to respond. (*Id.* at 2:13:26 – 2:13:45). As to books similar to his that have been successful, Plaintiff was unable to provide

9

evidence concerning how much money they made and how his book would have made similar profits if published by the Defendant as stipulated in the contract. (*Id.* at 2:23:00 -2:27:15). Following the hearing, the undersigned directed the Plaintiff to provide supplemental evidence to the Court concerning the existence of a contract between the parties, and the amount of financial loss suffered by Plaintiff as a result of Defendants' failure to perform under the contract, including any evidence of books similar to his and how much those books made in profits, by April 10, 2019. (*Id.* at 2:28:00 – 2:29:35).

### III. LEGAL STANDARD

Although the Federal Rules of Civil Procedure and the Fourth Circuit Court of Appeals encourage dispositions of claims on their merits, trial judges have discretion to enter default judgments. Broad. Music, Inc. v. CTR Hotel Partners, LLC, No. 3:12-CV-59, 2013 U.S. Dist. LEXIS 39464, at *3-4 (N.D.W. Va. March 21, 2013) (citing Reizakis v. Loy, 490 F.2d 1132, 1135 (4th Cir. 1974). Federal Rule of Civil Procedure 55 authorizes the entry of a default judgment "when a defendant fails to plead or otherwise defend in accordance with the Rules." Broad Music Inc., 2013 U.S. Dist. LEXIS 39464, at *4 (citing United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982)). "The Clerk of the Court's 'entry of default' pursuant to Rule 55(a) of the Federal Rules of Civil Procedure provides notice to the defaulting party prior to the entry of default judgment by the court." *Id.* (citing Carbon Fuel Co. v. USX Corp., No. 97-1995, 1998 U.S. App. LEXIS 18191, 1998 WL 480809, at *2 (4th Cir. Aug. 6, 1998). After the entry of default, the non-defaulting party may move the court for "default judgment" under Federal Rule of Civil Procedure 55(b).

Under Rule 55(b)(1), "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk, on the plaintiff's request, with an affidavit showing the

amount due, must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing. . ." Fed. R. Civ. P. 55(b)(1). However, as in this case, when the sum is not certain, default can only be made by the Court. Fed. R. Civ. P. 55(b)(2).

Upon default, "all of the well-pleaded facts alleged in the Complaint, as to liability, are deemed admitted, but the amount of **damages** are not." Broad Music Inc., 2013 U.S. Dist. LEXIS 39464, at *4-5 (citing Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001). However, Federal Rule of Civil Procedure 54(c) "limits the court's discretion in entering default judgment: [a] **default judgment** must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Id. at *5 (citing Fed. R. Civ. P. 54(c)).

### IV.　ANALYSIS

The undersigned has previously determined that Plaintiff's requested damages are not a sum certain (ECF No. 19), and accordingly, held an evidentiary hearing on the issues of the existence of a contract, liability, and Plaintiff's damages, allowing Plaintiff additional time to submit documentation supporting his claims. (ECF No. 29). The undersigned will analyze each of these three issues separately herein. First, whether a valid and enforceable contract existed between the Plaintiff and Defendants. Second, whether the Defendants breached the terms of the contract. Last, whether the Plaintiff suffered damages, and if so, the amount of damages Plaintiff suffered.

#### A. Plaintiff had a valid contract with the Defendants.

The elements necessary to establish and prove a breach of contract claim is as follows: (1) a contract exists between the parties; (2) the defendant failed to comply with a term in the contract; and (3) damage arose from the breach. Smallwood v. Sovereign Bank, Inc., F.S.B., No.

3:11-CV-87, 2012 U.S. Dist. LEXIS 8928, at *13 (N.D.W. Va. January 25, 2012) (citing Wince v. Easterbrooke Cellular, Corp., 681 F.Supp.2d 688, 693 (N.D.W. Va. 2010).

Here, the testimony and supplemental evidence provided by the Plaintiff clearly establishes a contract exists between the parties. (ECF No. 36-26). As part of his supplemental evidence submitted following the Motion Hearing held on March 20, 2019 (ECF No. 33), Plaintiff included a document titled "Investment Agreement" that details the terms of the contract between the parties, is evidenced by the signature of both parties, and operates as a contractual agreement that was sent to Plaintiff and signed by Defendant on June 20, 2010. (ECF No. 36-26).

The most important terms of the agreement are as follows: Under the section titled "Investor's Obligations", (1) Services: The Investor ("Defendants") agrees and commits to provide financing in connection with the series of books and a documentary to be entitled "Power Moves 1-4" and yet to be titled documentary (the "Projects"). Investor will also handle marketing/promotions; (2) Compensation: Provided Investor **renders all services required hereunder and is not in breach or default of this Agreement,** Investor shall be reimbursed the full amount of its investment from the initial income generated by the Project; (3) **Advance: Investor shall advance Company** ("Linwood Williams, Plaintiff"), **Five Thousand dollars ($5,000)**. Said funds shall be fully recoupable in addition to all editorial, publishing, marketing and distribution fees by Investor prior to the distribution of net profits; CONTINGENT COMPENSATION: Linwood Williams 50%; GC Worldwide, LLC 50%[2]. (ECF No. 36-26, at 1-3) (emphasis added). Page four of the agreement shows the contract was signed by Defendant Zacharia Ali on behalf of Gangster Chronicle Worldwide, LLC and by Plaintiff, Linwood

---

[2] The undersigned notes that the terms of the agreement appear out of order as submitted by Plaintiff. The undersigned has construed and interpreted page 2 of the contract (ECF No. 36-26) to be the operative final page of the agreement, while page 3 should operate as the continuance of the terms contained on page 1. (ECF No. 36-26).

Williams on April 28, 2011, effectively beginning a contractual relationship between the parties.[3]

The parties' intent to contract is further evidenced by email exchanges between the parties provided in supplemental evidence by the Plaintiff. On May 26, 2010, Defendant Zacharia Ali emailed Plaintiff "I will also start putting together a contract so that we can go over it the next time I'm up. Want to start moving things forward, such as putting the books together with an editor to start the proofing process." (ECF No. 36-10). Accordingly, the undersigned is of the opinion that a valid and enforceable contract exists between the Plaintiff and Defendants.

### B. Defendants' materially breached the contract with the Plaintiff.

Under the terms of the contract, Defendants, as "Investor's Obligations" agreed to "provide financing in connection with the series of books and a documentary to be entitled "Power Moves 1-4" and yet to be titled documentary (the "Projects"). Investor will also handle marketing/promotions." (ECF No. 36-26). Based upon the testimony and evidence presented, Plaintiff provided the Defendants with "four manuscripts" for his books "Power Moves" as provided under the contract and one additional manuscript not covered under the contract titled "Day and Night". (ECF No. 36-4, 5, 10). Under the contract, it was Defendants' obligation and agreement to "provide financing" and "marketing/promotions" for Plaintiff's books, "Power Moves 1-4." (ECF No. 36-26). Presently, based upon the evidence submitted and testimony of the Plaintiff, Defendants only assisted in the financing and publishing of "Power Moves I0," which was published on Amazon in June of 2014 in both paperback and e-book formats. (ECF No. 39-1, at 9-10, 19-21).

---

[3] The undersigned further notes that the contract between the parties contains an Arbitration Agreement. However, the undersigned is of the opinion that the Defendants would need to assert this provision in an answer or other responsive pleading for it to be enforced in this action. Because the Defendants have failed to answer or otherwise file any responsive pleading to Plaintiff's Complaint and default has been entered against them, the Arbitration Clause should not be enforced.

While emails suggest that Defendants did send Plaintiff's books, "Power Moves 1-4" and additional manuscripts to an editor, there is no evidence of record suggesting any marketing, financing, or publishing efforts have been made by Defendants with regard to "Power Moves 2-4." (ECF No. 36-12,13,14,15 and 23).

Further, under the contractual agreement, Defendants agreed to provide Plaintiff with a "$5,000 advance." (ECF No. 36-26). The intention of Defendants to provide Plaintiff with such an advance is further evidenced by email exchanges submitted by Plaintiff as supplemental evidence. (ECF No. 36-16, 17). Based upon the testimony of Plaintiff, Plaintiff has received "$2,000" of the advance and estimates he has received "$1,500" from Defendants in incremental deposits of $50.00 and $100.00 at a time over the course of several years throughout their business relationship. There is no evidence to suggest Defendants have provided Plaintiff with the full advance promised. Accordingly, for the reasons stated above, the undersigned is of the opinion that Defendants have breached material terms of the contractual agreement between the Plaintiff and Defendants.

### C. **Plaintiff is entitled to reasonable damages that are supported by evidence. Plaintiff is not entitled to recover damages that are remote and speculative.**

In an action for a breach of contract, a "Plaintiff must demonstrate 'not only the amount of its damages but also that the damages were proximately caused by the defendant's breach,'" and such damages "cannot be too remote, contingent or speculative, but must consist of actual facts from which a reasonably accurate conclusion could be drawn regarding the cause and amount of such damages." Dan Ryan Builders, Inc. v. Crystal Ridge Dev., Inc., No. 1:09CV161, 2013 U.S. Dist. LEXIS 136589, at *39 (N.D.W. Va. September 24, 2013) (citing Kanawha – Gauley Coal & Coke Co. v. Pittston Minerals Group, Inc., No. 2:09-CV-01278, 2011 U.S. Dist.

LEXIS 80411, (S.D.W. Va. July 22, 2011) and <u>Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.</u>, 681 F.Supp.2d 694, at 726 (S.D.W. Va. 2009)).

Plaintiff has requested "$10,000,000" in damages as a result of Defendants' failures and breach under their contractual agreement. (ECF Nos. 1 and 39, at 6). However, this request has been previously deemed by the undersigned as far too speculative to be a "sum certain" or one that can be made certain by computation as required under Federal Rule of Civil Procedure 55(b)(1). Based upon Plaintiff's testimony and supplemental evidence submitted to the Court, Plaintiff has based his damages calculation upon "the success of similar novels such as 'Dutch', 'Deadly Reign', and 'True to the Game'" as well as the fact that he "declined other credible offers while committing himself, his trilogy, movie rights, and other intellectual properties to GC for a period of five years." (ECF No. 39-1, at 18).

Plaintiff submitted to the Court supplemental evidence of the success of "similar books" that he believes his "Power Moves" series would have matched or exceeded in popularity, sales, and success. (ECF No. 36-27). However, the success of other books, however similar, is not evidence of how successful his book series would have been if published by the Defendants or through any other means. The undersigned is of the opinion that evidence of success of similar books is of a highly speculative nature and not certain enough to base any calculation of damages upon. Plaintiff further argues that he declined other offers from "Ron Cheppsiak, a bona fide author and producer" as well as Carl Michael Cannady, a Jay-Z and Roc Nation affiliated agent and movie producer." (ECF No. 39 at 3-4). However, the evidence Plaintiff has submitted of these offers are email exchanges and demonstrate no more than an "invitation to deal", making no mention of any payment or advances to be made to Plaintiff in furtherance of any potential agreement. Therefore, the undersigned is of the opinion such evidence is too speculative and

15

does not establish any amount of damages suffered by the Plaintiff in his reliance upon the contract with the Defendants.

Plaintiff next argues that a "search of Amazon.com website yielded" information regarding the sales and "ratings" of his book "Power Moves I." (ECF No. 39, at 5). Plaintiff states that "over the past 12 months" his book has received a total of "31,599 ratings" and "assuming that the 31,599 ratings represent e-book sales figures, then 31,599 x $16 = $189, 594.00 (1 year)." (ECF No. 39, at 5). Plaintiff further argues based upon the number of years the book has been available on Amazon that "31,599 x $16 x 6" (6 years) "= 1,117,564.00". (ECF No. 39, at 6). However, the number of ratings Plaintiff's book has received does not, in any manner to be deemed certain, establish the number of sales of Plaintiff's book, Power Moves I.

The Plaintiff has submitted emails from Defendants showing that Plaintiff's book had sold "112 units" and "186" units over different time periods. (ECF No. 36-19, 20, 21). However, the undersigned has no evidence establishing a complete and total number of sales of Plaintiff's book nor is there any evidence of the number of sales of each version of the book (paperback and e-book) or at what price. As a result, the undersigned is of the opinion that the evidence of Plaintiff's book sales is not sufficient to establish damages based upon book sales with any degree of certainty.

However, under the terms of the contract, as provided and discussed above, Defendants agreed to provide Plaintiff with a $5,000 advance. Based upon the evidence submitted by Plaintiff and Plaintiff's testimony, Plaintiff received $2,000 of the advance from the Defendants and an additional $1,500 in incremental deposits. While Plaintiff argues that he considered the incremental deposits a "gift from a friend", there is no evidence to support a finding that these deposits were gifts and should not be considered as part of his advance. Therefore, the

undersigned **RECOMMENDS** the Court award Plaintiff the remaining $1,500 owed to him under the terms of the contract providing for his advance. The undersigned further **RECOMMENDS** the Court award Plaintiff all costs of filing this action as reflected on the docket.

The Plaintiff has further submitted evidence of his disputes with the Defendants through documented email exchanges. One such exchange, dated June 26, 2014, indicates the Plaintiff stated to Defendant "should you fail to publish and/or release POWER MOVES July 15, 2014, our contract will be voided and terminated for failure to perform. . ." (ECF No. 39-1, at 10). Further email exchanges dated October 3 and 4, 2015 (ECF No. 36-21, 22, 23) evidence the parties' dispute over transparency and accountability with regard to the publishing of Plaintiff's books as well as the number of sales and amount spent on the marketing of Plaintiff's books. The emails further evidence Plaintiff's desire to terminate the contract between himself and the Defendants. Based upon Plaintiff's testimony and the evidence submitted, there have been no further communications between the Plaintiff and Defendants subsequent to October 4, 2015. Therefore, the undersigned **RECOMMENDS** Plaintiff's contract with the Defendants be deemed null and void as of October 5, 2015, and any proceeds from sales of Plaintiff's book, Power Moves I as of October 5, 2015 be deemed as belonging exclusively to the Plaintiff.

### D. Plaintiff's allegations in his Amended Complaint regarding copyright infringement are not supported by evidence.

"In order to establish a prima facie case of copyright infringement, a plaintiff must prove: (1) that he owns a valid copyright, and (2) that the defendant engaged in unauthorized copying." Nat'l Med. Care, Inc. v. Espiritu, 284 F.Supp.2d 424, at 432-33 (S.D.W. Va. 2003) (citing Nelson-Salabes, Inc. v. Morningside Dev., Inc., 284 F.3d 505, 513 (4th Cir. 2002). "A certificate of copyright registration is prima facie evidence of ownership of a valid copyright." Nat'l Med.

Care, Inc., 284 F.Supp.2d at 433 (citing 17 U.S.C. § 410). While Defendants have been rendered to be in default by failing to timely file an Answer or other responsive pleading to Plaintiff's Amended Complaint, only the "well-pleaded facts" as to liability are deemed admitted. Further, in a copyright action, the Court considers whether Plaintiff has set for claims for which relief can be granted pursuant to the standard of Federal Rule of Civil Procedure 12(b)(6). *See* GlobalSanta Fe Corp. v. Globalsantafe.com, 250 F.Supp.2d 610, 612 n.3 (E.D. Va. 2003) (considering facts and evaluating Plaintiffs claims prior to entry of default judgment in copyright action.); *see also* Joe Hand Promotions, Inc. v. Lil Dd'z, Inc., No. 7:12-CV-00218, 2012 U.S. Dist. LEXIS 94010, at *4 (D. S.C. July 6, 2012).

Here, the undersigned finds that Plaintiff has not plead any facts nor presented any evidence to establish that he owned a valid copyright to the manuscripts of his books, Power Moves. Further, Plaintiff testified at the hearing held on March 20, 2019, that he, in fact, is in possession of his manuscripts to the Power Moves books. Plaintiff testified that he published his "second book" on Amazon on his own and has turned rights to the profits from his book, "Power Moves II: Young and Deadly" to his "son" and he is unaware how much money the book has made or how many have been sold. (FTR Rec. at 1:59:00 – 2:00:06). Plaintiff testified that he is in possession of his "manuscripts" for several "Power Moves" books and has plans to write "ten" in total and to "self-publish" his books. (*Id.* at 2:00:02 – 2:01:18). Further, Plaintiff has not presented any evidence that his manuscripts were stolen or that Defendant has engaged in any unauthorized copying. In fact, Defendant and Plaintiff had a contract for Defendant to publish Plaintiff's books, thereby implying any production of his books by Defendant was authorized. Finally, Plaintiff has not presented any credible evidence of damages flowing from any alleged copyright infringement.

## V. CONCLUSION

For the reasons stated herein, the undersigned **RECOMMENDS** Plaintiff's Motion to Enter Default Judgment (ECF No. 67) be **GRANTED**, **Plaintiff be awarded DAMAGES in the amount of $1,500.00**, and the Court award Plaintiff all costs of filing this action as reflected on the docket. The undersigned further **RECOMMENDS** that the contractual relationship between Plaintiff and Defendants be deemed null and void as of October 5, 2015, and accordingly, any proceeds from sales of Plaintiff's book, Power Moves I, as of October 5, 2015 belong exclusively to the Plaintiff.

Any party shall have fourteen days from the date of filing this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Thomas S. Kleeh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to mail a copy of this Order to the *pro se* Plaintiff, Linwood Rudolph Williams, by certified mail, return receipt requested and to Defendants, Zacharia Ali

and Gangster Chronicle Worldwide, LLC, by certified mail, return receipt requested, at the most recent addresses used for service of process.

      Respectfully submitted this December 2, 2019.

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE